

1 | Sarah Kleven McGann (230408)
sarah@klevenmcgann.com
2 | KLEVEN MCGANN LAW
105 West F Street, 4th Floor
3 | San Diego, CA  92101
Tel:   (619) 838-2419
4 | Fax:   (619) 858-3306

5 | Daniel Marino (*pro hac vice forthcoming*)
dmarino@marinolawpllc.com
6 | Tillman J. Finley (*pro hac vice forthcoming*)
tfinley@marinolawpllc.com
7 | MARINO FINLEY PLLC
1100 New York Avenue, NW Suite 700W
8 | Washington, DC  20005
Tel:   (202) 223-8888
9 | Fax:   (877) 239-2146

10 | *Counsel for Relators Anthony Colangelo
and Minburn Technology Group, LLC*

11 |

12 | **UNITED STATES DISTRICT COURT**

13 | **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14 | UNITED STATES OF AMERICA EX
REL. ANTHONY COLANGELO and
15 | MINBURN TECHNOLOGY GROUP,
LLC, a Virginia limited liability
16 | company,

17 |                 Plaintiff,

18 | v.

19 | EN POINTE GOV, INC., a Delaware
corporation; EN POINTE
20 | TECHNOLOGIES, INC. d/b/a "En Pointe
Technologies," a Delaware corporation;
21 | EN POINTE TECHNOLOGIES SALES,
INC., a Delaware corporation;
22 | DOMINGUEZ EAST HOLDINGS, LLC,
a California limited liability company;
23 | and DIN GLOBAL CORP., a Delaware
corporation,
24 |

25 |                 Defendants.

Civil Case No. CV14-5865 RGK-JPR

**RELATOR'S COMPLAINT FOR DAMAGES AND PENALTIES UNDER THE FALSE CLAIMS ACT, 31 U.S.C. §§ 3729-3732**

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2) JURY TRIAL DEMANDED**

DO NOT PLACE IN PRESS BOX OR ENTER ON PUBLICLY ACCESSIBLE SYSTEM

26 |

27 |

28 |

COMES NOW Plaintiff the United States of America, by and through *qui tam* relators Anthony Colangelo and Minburn Technology Group, LLC (collectively, "Relators"), who brings this action under the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA"), and for the complaint against Defendants allege as follows:

## **INTRODUCTION**

1.      This is an action brought on behalf of the United States to recover damages, obtain disgorgement, and impose civil penalties resulting from the knowingly false and/or fraudulent claims, records, certifications, and/or statements made, used, or caused to be made or used by the Defendants from at least 2005 through the present to obtain small business set-aside government contracts for the provision of information technology ("IT") products and services for which they were not eligible and to avoid payment of fees required as part of their participation in the General Services Administration's ("GSA") Multiple Award Schedule ("MAS") program.

2.      Specifically, Defendants have conspired to repeatedly and falsely represent and certify that Defendant En Pointe Gov, Inc. is a small business concern (or caused such to be represented or certified), thereby fraudulently making it eligible to compete for and to be awarded small business set-aside government contracts.  Defendants essentially have used Defendant En Pointe Gov, Inc. as a "front" for En Pointe Technologies, Inc., and its various affiliates, to gain access to hundreds of millions of dollars in small business set-aside contracts for which they would not otherwise qualify.

RELATOR'S COMPLAINT FOR DAMAGES AND PENALTIES UNDER THE FALSE CLAIMS ACT, 31 U.S.C. §§ 3729-3732          CASE NO. CV-14-

3.     Further, Defendants also have conspired to substantially underreport En Pointe Gov, Inc.'s sales under its GSA IT Schedule 70 MAS contract, No. GS-35F-0372N, on the company's quarterly GSA Form 72A, Contractor Report of Sales since at least the quarter ending December 31, 2007, thereby avoiding nearly $1 million in Industrial Funding Fees owed to the GSA and concealing the falsity of its small business concern certifications.

4.     In fact, En Pointe Gov, Inc. has, from its creation, been an affiliate of, among others, Defendant En Pointe Technologies, Inc., a large, global IT products and services company with thousands of employees and annual revenues in excess of $300 million.

5.     By their conduct, Defendants have, to date, falsely and fraudulently obtained at least 157 small business set-aside requirements with a value in excess of $48 million.  At the same time, Defendant En Pointe Gov, Inc. has falsely and fraudulently failed to report more than 80 percent of its GSA Schedule 70 sales, thereby avoiding nearly $1 million in fees (and likely more) and concealing the fact that, since 2009, its GSA sales *alone* have exceeded the revenue-based size standards established by the Small Business Administration for some of the industry categories for which Defendant En Pointe Gov, Inc. claims small business status.

6.     Accordingly, and as detailed below, Defendants are liable to the United States for the value of more than $48 million in falsely and fraudulently obtained small

business set-aside contracts, at least $925,819.27 in falsely and fraudulently avoided GSA Industrial Funding Fees, treble damages at least in the amount of $147 million, and civil penalties in excess of $2.8 million reflecting at least 260 instances of false representations and/or claims made to the United States.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, and 1367(a) and 31 U.S.C. § 3732.

8.     This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a), which authorizes nationwide service of process in cases brought under the False Claims Act, and because, *inter alia*, all five Defendants have offices in this District, have transacted business in this District, have engaged in wrongdoing in this District, and have at least minimum contacts with the District.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 and 31 U.S.C. § 3732(a) because all five Defendants can be found in this District, all five transact business there, and acts proscribed by 31 U.S.C. § 3729 occurred there.

4

## PARTIES

10.     Relator, Anthony Colangelo, is a resident of the Commonwealth of Virginia.  Relator Colangelo is the Managing Member of Relator Minburn Technology Group, LLC, a Virginia limited liability company and service-disabled veteran-owned small business with its primary office located in Great Falls, Virginia.

11.     Defendants are a group of companies that provide IT products and services to commercial enterprises, educational and healthcare institutions, government agencies, and non-profits.  They are all owned, directly or indirectly, by Attiazaz "Bob" Din (EN POINTE's founder and CEO); his wife, Naureen Din (also a member of the Board of Directors); and members of their family.

12.     Defendant En Pointe Gov, Inc. (hereinafter "EN POINTE GOV") is a Delaware corporation with its principal place of business located at 18701 S. Figueroa Street, Gardena, California 90248-4506.  It was created as a wholly-owned subsidiary of EN POINTE and remained so until January 1, 2011, when it became a wholly-owned subsidiary of DEH.

13.     Defendant En Pointe Technologies, Inc. (hereinafter "EN POINTE") is a Delaware corporation with its principal place of business located at 18701 S. Figueroa Street, Gardena, California 90248-4506.  Since March 2009, it has been a wholly-owned subsidiary of DIN GLOBAL.

14.     Defendant En Pointe Technologies Sales, Inc. (hereinafter "EN POINTE SALES") is a Delaware corporation with its principal place of business located at 18701 S. Figueroa Street, Gardena, California 90248-4506.  It is a wholly-owned subsidiary of EN POINTE.

15.     Defendant Din Global Corp. (hereinafter "DIN GLOBAL") is a Delaware corporation with its principal place of business located at 18701 S. Figueroa Street, Gardena, California 90248-4506.  DIN GLOBAL is a holding company, incorporated on February 4, 2009, which acquired EN POINTE on or about March 11, 2009.  DIN GLOBAL is owned by Attiazaz "Bob" Din, his wife, Naureen Din, and various members of the Din family.

16.     Defendant Dominguez East Holdings, LLC (hereinafter "DEH") is a California corporation with its principal place of business located at 18701 S. Figueroa Street, Gardena, California 90248-4506.  DEH is a holding company, incorporated on November 4, 2010, which acquired EN POINTE GOV on or about January 1, 2011.  The President and sole owner of DEH is Ali Din, the son of Attiazaz "Bob" Din.

**The False Claims Act**

17.     The False Claims Act makes subject to legal action any person who knowingly presents or causes to be presented false or fraudulent claims for payment or approval to the United States.  31 U.S.C. § 3729(a)(1).  The FCA also makes subject to

6

suit any person who "knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

18.     The term "knowingly" under the FCA means that a person, with respect to information, (a) has actual knowledge of the information, (b) acts in deliberate ignorance of the truth or falsity of the information, or (c) acts in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3728(b)(1). No proof of specific intent to defraud is required to show a person acted knowingly under the FCA. 31 U.S.C. § 3729(b).

19.     The FCA provides for recovery of three times the damages sustained by the United States ("treble damages") plus a civil penalty for each false claim presented or caused to be presented. This penalty is to be not less than $5,500 and not more than $11,000, per instance. 31 U.S.C. § 3729(a); 28 C.F.R. § 85.3(a)(9).

### The Small Business Act

20.     Congress established the Small Business Administration ("SBA") in 1953. The SBA is a cabinet-level agency headquartered in Washington, D.C. Its mission is to preserve free competitive enterprise and to maintain and strengthen the overall economy of our nation by assisting in and facilitating the creation and growth of small businesses, a critical component of the country's economic strength and health.

21.     As set forth in Section 2 of the Small Business Act:

The essence of the American economic system of private enterprise is free competition. Only through full and free competition can free markets, free entry into business, and opportunities for the expression and growth of personal initiative and individual judgment be assured. The preservation and expansion of such competition is basic not only to the economic well-being but to the security of this Nation. Such security and well-being cannot be realized unless the actual and potential capacity of small business is encouraged and developed. It is the declared policy of the Congress that the Government should aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns in order to preserve free competitive enterprise, to insure that a fair proportion of the total purchases and contracts or subcontracts for property and services for the Government (including but not limited to contracts or subcontracts for maintenance, repair, and construction) be placed with small-business enterprises, to insure that a fair proportion of the total sales of Government property be made to such enterprises, and to maintain and strengthen the overall economy of the Nation.

15 U.S.C. § 631(a).

22.    The Federal Acquisition Regulations ("FAR") further state that "[i]t is the policy of the United States that small business concerns ... shall have the maximum

practicable opportunity to participate in performing contracts let by any Federal agency ....." FAR 52.219-8 ("Utilization of Small Business Concerns").

23.     The SBA is responsible for developing and administering initiatives to encourage the selection of small businesses to perform government contracts.  These efforts include various programs setting aside certain government contracts exclusively for small business concerns.

24.     In the Small Business Act, Congress created a government-wide goal for contracting to small businesses, which is currently 23% of federal executive agency procurements.  15 U.S.C. § 644(g).  Each year, the SBA reports on each of the federal agencies' progress in reaching its goal.  In order to meet the small business contracting goals, each federal agency involved in procurement creates opportunities called "set-asides" for either all small businesses or a subset of small businesses to compete against a pool of like-size contractors.  This allows small businesses to gain opportunities they might not have had competing against larger, resource-rich companies.

25.     For the purposes of federal procurement programs for which status as a small business concern is required, a concern must not exceed the size standard established by the SBA for the type of services at issue.  The size standard is articulated in terms of either the maximum allowable average number of employees in a 12-month period or the maximum allowable average annual receipts over a three-year period.  The specific standard varies based upon the particular industry at issue.  Each size standard

is matched to an industry code described in the North American Industry Classification System ("NAICS"), and the table is published annually in the Federal Register. 13 C.F.R. § 121.101.

26.     For example, NAICS Code 541519 for "Other Related Computer Services" has a size standard of average annual revenues of $25.5 million or less or, in the case of "Information Technology Value Added Resellers," 150 employees or less. 13 C.F.R. § 121.201.

27.     Businesses may have a primary NAICS code, but may also qualify for other NAICS codes depending on their business activities.

28.     To qualify for small business status, a company may not be affiliated with any other entities which, when combining the assets, employees, or other size factors of the affiliated company or companies with the business, would cause the business to exceed the size standards.

29.     The SBA determines whether an entity qualifies as a small business concern by counting its receipts, employees, or other measure including those of all its domestic and foreign affiliates, regardless of whether the affiliates are organized for profit. 13 C.F.R. § 121.103(a)(6).

30.     "Affiliation" exists when one business controls or has the power to control another or when a third party (or parties) controls or has the power to control both businesses. 13 C.F.R. § 121.103(a)(1). Control may arise through "ownership,

management, previous relationships with or ties to another concern, and contractual relationships." 13 C.F.R. § 121.103(a)(2).  If one or more officers, directors, managing members, or general partners of a business controls the Board of Directors and/or the management of another business the businesses are affiliates.  13 C.F.R. § 121.103(e).

31.   "Affiliation" also exists when there is an identity of interest between individuals or businesses, including family members.  Individuals or firms that have identical (or substantially identical) business or economic interests may be treated as though they are affiliated unless they can demonstrate otherwise.  Family members, persons with common investments, or firms that are economically dependent through contractual (or other) relationships, are among those treated this way.  Patterns of subcontracting, commingling of staff and/or facilities, and other veiled attempts to disguise the true nature of the relationship may evidence an identity of interest.  13 C.F.R. § 121.103(t).

32.   Additionally, "Affiliation" exists under the "Newly Organized Concern Rule":

Affiliation may arise where former officers, directors, principal stockholders, managing members, or key employees of one concern organize a new concern in the same or related industry or field of operation, and serve as the new concern's officers, directors, principal stockholders, managing members, or key employees, and the one concern

is furnishing or will furnish the new concern with contracts, financial or technical assistance, indemnification on bid or performance bonds, and/or other facilities, whether for a fee or otherwise .... A "key employee" is an employee who, because of his/her position in the concern, has a critical influence in or substantive control over the operations or management of the concern.

13 C.F.R. § 121.103(g).

33.     Eligibility for small business opportunities is generally determined on a procurement-by-procurement basis. Each procurement officer must classify the product or service being sought in a particular NAICS code, identify the size standard that the SBA has set for that code and specify the standard in the solicitation, so businesses can correctly determine if they qualify as small for that particular solicitation. FAR 19.102. A business may generally qualify as small under their primary NAICS code, but may not qualify as small for a particular procurement and vice-versa.

34.     Businesses that do not qualify as a small business concern are labeled as "other than small." Being "other than small" is not the same as being large; it only means that the company does not qualify under the parameters set by Congress and the SBA to be classified as a small business concern for a procurement only available to small businesses.

35.    The SBA relies on businesses to self-certify their qualification as a small business when bidding on a contract. As a condition of bidding on government contracts, a company is required to register. Effective July 30, 2012, registration has been required through the System for Award Management ("SAM"). Prior to that time, contractors were required to register with the Central Contractor Registration ("CCR").

36.    In registering or renewing its registration (which must be done at least annually), a business provides general information and, among other things, certifies whether it as a small business.

37.    It is a federal criminal offense to "misrepresent[ ] the status of any concern or person as a 'small business concern' … in order to obtain for oneself or another any" prime contract or subcontract. 15 U.S.C. § 645.

38.    When a company bids on set-aside government contracts by misrepresenting its organizational status or affiliations with larger, non-qualified businesses, it takes contracts away from legitimate small businesses and undermines the objectives of the SBA.

39.    The Small Business Act provides that any business that misrepresents its status as a small business concern shall be subject to penalties under the False Claims Act. 15 U.S.C. § 637(m)(5)(C).

40.    Pursuant to 15 U.S.C. § 632(w)(1), there is a "presumption of loss to the United States based on the total amount expended on the contract … whenever it is

RELATOR'S COMPLAINT FOR DAMAGES AND PENALTIES UNDER THE FALSE CLAIMS ACT, 31 U.S.C. §§ 3729-3732                    CASE NO. CV-14-

established that a business concern other than a small business concern willfully sought and received the award by misrepresentation."

41.     Further, 15 U.S.C. § 632(w)(2) states that:

The following actions shall be deemed affirmative, willful, and intentional certifications of small business size and status:

(A) Submission of a bid or proposal for a Federal grant, contract, [or] subcontract … reserved, set aside, or otherwise classified as intended for award to small business concerns.

(B) Submission of a bid or proposal for a Federal grant, contract, [or] subcontract … which in any way encourages a Federal agency to classify the bid or proposal, if awarded, as an award to a small business concern.

(C) Registration on any Federal electronic database for the purpose of being considered for award of a Federal grant, contract, [or] subcontract ….

**EN POINTE GOV's False Statements, Certifications, and Claims**

42.     EN POINTE GOV has, at least 221 times, falsely stated, represented, or certified to the United States that it is a small business concern.

43.     First, in EN POINTE GOV's certifications made through SAM on at least the following dates, representatives of EN POINTE GOV certified that it was both "a small business concern" and "a small business disadvantaged concern as defined in 13 C.F.R. 124.1002":

14

| March 22, 2012 | August 5, 2013 | June 10, 2014 |
| May 21, 2013 | January 28, 2014 | June 12, 2014 |

44.     Each time, the representative further specifically certified that EN POINTE GOV is a small business under the SBA's size standards for each of the following NAICS codes:

| 334112 | 423430 | 541513 |
| 334418 | 511210 | 541519 (exception 1) |
| 334513 | 541511 | 541519 (exception 2) |
| 335999 | 541512 | 811212 |

45.     Further, in some certifications, EN POINTE GOV also specifically certified that it was a small business under the SBA's size standards for former NAICS codes 334111, 334113, 334119, 334611, 334613, and 443120.

46.     Second, in requesting modification of its IT Schedule 70 MAS contract in or about August 2010, EN POINTE GOV falsely represented to GSA that it was a small business concern.

47.     Third, EN POINTE GOV again falsely represented to GSA that it was a small business concern in connection with GSA's exercise of a five-year option on GSA Schedule GS-35F-0372N in or about March 2013.

48.     Fourth, EN POINTE GOV falsely represented to the United States that it was a small business concern in bidding for orders and/or contracts which were

15

specifically identified as small business set-asides, including but not limited to the following:

| Contract No. | Agency | Award Date | Amount |
| --- | --- | --- | --- |
| GS35F0372N | Dept. of Defense (HQ Services / Office of the Secretary of Defense Communications) | 8/22/2013 | $496,723.68 |
| GS35F0372N | Small Business Administration | 9/25/2013 | $4,712,828.40 |
| GS35F0372N | Dept. of Defense | 3/12/2014 | $1,746,380.84 |
| GS35F0372N | Securities and Exchange Commission | 5/22/2014 | $7,655,992.53 |
| GS35F0372N | Dept. of Education | 5/30/2014 | $11,846,293.00 |
| EDCIO14A0002 | Dept. of Education | 5/30/2014 | $2,137,331.80 |

49.     All of the foregoing statements, representations, and/or certifications were knowingly false.

50.     Because of its affiliation with EN POINTE, among others, EN POINTE GOV, at the time it made such statements, representations, and/or certifications, did not meet the size standards for any of the NAICS codes set forth above in paragraphs 44 and 45 by virtue of its affiliation with EN POINTE, among others.

51.     Throughout its existence, EN POINTE GOV has been owned and controlled by EN POINTE, an EN POINTE subsidiary, a common parent company, and/or members of the Din family.

16

52. From its incorporation in 2000 through 2010, EN POINTE GOV was a wholly-owned subsidiary of EN POINTE.

53. On or about January 1, 2011, EN POINTE GOV became a wholly-owned subsidiary of DEH which in turn was owned by Ali Din, the son of the founder, CEO, and owner of EN POINTE.

54. The same family, the Dins, are the ultimate owners of both EN POINTE and EN POINTE GOV.

55. EN POINTE had more than 1,000 employees.

56. Until 2009, EN POINTE was a publicly-traded stock corporation listed on the NASDAQ Stock Market.

57. Since at least 1999, EN POINTE has had annual revenues in excess of $200 million, exceeding $500 million in some years.

58. EN POINTE GOV shares the same principal business address and office with EN POINTE, *i.e.*, 18701 S. Figueroa Street, Gardena, California 90248-4506.

59. EN POINTE GOV shares a telephone number with EN POINTE: 310-337-5200.

60. The same individuals have acted on behalf of both EN POINTE and EN POINTE GOV, both by virtue of simultaneously holding positions with both companies and irrespective of their nominal employment by one entity or the other, including by signing certifications to the government, serving in management positions, serving as

contract administrators and/or government points of contact for both entities, and attending meetings with vendors.

61.     EN POINTE GOV utilizes special partnerships, authorizations, and other arrangements held by EN POINTE with computer hardware and software manufacturers, including EN POINTE's Licensing Solution Provider ("LSP") authorization from Microsoft.

62.     EN POINTE and EN POINTE GOV utilize a shared, or at least overlapping, information technology infrastructure.  Both companies utilize the same online ordering system called "AccessPointe."  Both companies use email addresses that end with the same domain, *i.e.*, "@enpointe.com."

63.     EN POINTE has itself used EN POINTE GOV's government contracts to market itself, including by specific reference to EN POINTE GOV's GSA IT 70 MAS contract.

64.     Since at least October 2012, EN POINTE SALES has performed for EN POINTE GOV sales and marketing support services, procurement services, information technology systems services (including telephones, email, computers, and printers), office equipment, meeting facilities, facilities management, and accounting, tax, and legal services.

65.     Including EN POINTE's employees and revenues with those of EN POINTE GOV results in employment and revenue figures that exceed (in some

instances far exceed) the SBA-established size standards for all of the NAICS codes claimed by EN POINTE GOV.

66.     Moreover, even setting aside the revenue of EN POINTE or any other affiliate, EN POINTE GOV's revenues from transactions with the federal government in both 2012 and 2013 exceeded the revenue-based size standard ($25.5 million) for NAICS Codes 541511 (Custom Computer Programming Services), 541512 (Computer Systems Design Services), 541513 (Computer Facilities Management Services), 541519 (Other Computer Related Services - Exception 1), and 811212 (Computer and Office Machine Repair and Maintenance).

67.     Between January 1, 2009 and December 31, 2013, EN POINTE GOV's transactions with various federal agencies, with base and exercised options, were obligated at an annual average in excess of $37.5 million.

68.     Despite not qualifying as a small business concern, EN POINTE GOV has received, and submitted claims for payment in connection with, at least 141 transactions from various federal agencies specifically designated as small business set-asides.  The total value of those actions, including the base and all options, is $47,908,225.84.

## EN POINTE's False Statements, Certifications, and Claims

69.     EN POINTE itself has falsely stated, represented, or certified to the United States at least 39 times that it is a small business concern.

70.     First, in EN POINTE's certifications made through SAM on at least the following dates, representatives of EN POINTE certified that EN POINTE is "a small business concern."  Such false certifications were made on at least the following dates:

June 27, 2012                     August 7, 2013                     June 10, 2014

71.     Each time, the representative further specifically certified that EN POINTE is a small business under the SBA's size standards for each of the following NAICS codes:

334111                334418                423430

334112                334513                519130

72.     Further, in some certifications, EN POINTE also specifically certified that it was a small business under the SBA's size standards for former NAICS codes 334113, 334119, 334611, 334613, and 443120.

73.     Second, EN POINTE falsely represented to the United States that it was a small business concern in bidding for orders and/or contracts which were specifically identified as small business set-asides.

74.     EN POINTE has received, and submitted claims for payment in connection with, at least 16 transactions from various federal agencies designated as small business set-asides with a total value of $187,055.88.

75.     Even setting aside the employees and/or revenue of EN POINTE GOV or any other affiliate, since at least 1995 EN POINTE's own employees and revenues have exceeded the SBA-established size standards for all of the NAICS Codes identified above in paragraphs 71 and 72.

## EN POINTE GOV's Under-Reporting of GSA Schedule Sales

76.     In the 1950s, the General Services Administration ("GSA") created the Federal Supply Schedule program, commonly referred to as the Multiple Award Schedule ("MAS"). The MAS program provides agencies with a simplified process of acquiring commercial supplies and services in varying quantities while obtaining volume discounts. Under the program, indefinite-delivery/indefinite-quantity ("IDIQ") contracts are awarded to various contractors allowing them to provide identified supplies and/or services at stated prices and subject to pre-negotiated terms and conditions. FAR 38.101(a). Once GSA issues a vendor an MAS contract, a buying agency may simply order directly from the vendor.

77.     One way to do this is through GSA's online shopping and ordering system called "GSA Advantage!", one component of which is an electronic request-for-quotation ("RFQ") tool called "e-Buy." Through e-Buy, the agency publicizes and

disseminates a statement of work ("SOW") and solicits quotations from GSA Schedule contractors.

78.     Since November 2, 2011, agencies have been able to set aside orders and Blanket Purchase Agreements ("BPAs") issued under the MAS program for small business concerns, including RFQs posted on e-Buy.  Such postings are to include a label identifying what kind of a set-aside the RFQ is and language stating that quotes from Schedule contractors who are not eligible for the set-aside will not be considered for award.

79.     MAS contracts are typically 20-year contracts comprised of a five-year base period with three five-year option periods.  As a condition of the award of an MAS contract, contractors are required to pay a fee to GSA equal to 0.75 percent of sales made under the schedule.  This is called the Industrial Funding Fee ("IFF") and it is intended to compensate GSA for the cost of running the schedule.  Contractors pay the IFF on a quarterly basis in conjunction with the filing of a GSA Form 72A, Contractor Report of Sales," through which the contractor reports its sales for the preceding calendar quarter.

80.     The largest of GSA's MAS contracts is the IT Schedule 70.  It enables any federal government agency to directly contract with commercial vendors for information technology products and services.

81.     Since 2003, Defendant EN POINTE GOV has had an IT Schedule 70 MAS contract, GSA Schedule GS-35F-0372N.

82.     EN POINTE GOV has received at least 2,084 transactions from various federal agencies utilizing its GSA Schedule, GS-35F-0372N. The total value of those actions, including the base and all options, is more than $260 million.

83.     For transactions executed through its GSA Schedule, GS-35F-0372N, with an effective date on or after October 1, 2007 and on or before March 31, 2014, the value of the base and all *exercised* options is $146,862,530.15.

84.     However, on its GSA Form 72A, Contractor Reports of Sales submitted to GSA for the same period, EN POINTE GOV reported just $23,419,961.

85.     Accordingly, for fiscal year 2008 through the first quarter of 2014, EN POINTE GOV has reported only approximately *16%* of its actual total sales through its IT Schedule 70 MAS contract, GSA Schedule GS-35F-0372N.

86.     EN POINTE GOV has failed to report $123,442,569.15 in sales through its GSA schedule resulting in at least $925,819.27 in unpaid IFF fees.

## COUNT I
### Conspiracy to Violate the False Claims Act – 31 U.S.C. § 3729(a)(1)(C)

87.     Relators repeat and reallege paragraphs 1 through 86 above as if fully set forth herein.

88.     Beginning in or about 2005 and continuing through the date of this Complaint, all Defendants willfully conspired to:

23

a.      knowingly present, or cause to be presented, false or fraudulent claims for payment or approval by the United States;

b.      knowingly make, use, or cause to be made or used, false records or statements material to false or fraudulent claims;

c.      knowingly make, use, or cause to be made or used, false records or statements material to an obligation to pay or transmit money to the United States; and

d.      knowingly conceal or knowingly and improperly avoid or decrease an obligation to pay or transmit money to the United States,

all in violation of 31 U.S.C. § 3729(a)(1).

89.     One or more of Defendants performed various overt acts in furtherance the conspiracy, including but not limited to the following:

a.      On various dates (including but not limited to March 22, 2012, May 21, 2013, August 5, 2013, July 28, 2014, June 10, 2014, June 12, 2014, and July 21, 2014) submitting SAM registrations certifying that EN POINTE GOV was a small business with respect to certain NAICS codes;

b.      On various dates (including but not limited to June 27, 2012, August 7, 2013, and June 10, 2014) submitting SAM registrations certifying that EN POINTE was a small business with respect to certain NAICS codes;

c.      In or about August 2010, in requesting modification of EN POINTE GOV's IT Schedule 70 MAS contract, falsely representing to GSA that it was a small business concern.

d.      In or about March 2013, again representing and certifying that EN POINTE GOV was a small business concern in connection with the government's exercise of its five-year option on EN POINTE GOV's GSA Schedule contract, GS-35F-0372N;

e.      On various dates, bidding for orders and/or contracts set aside for small business concerns as set forth above in paragraphs 48, 68, 73, and 82;

f.      On various dates, submitting invoices and/or requests for payment to the United States in connection with orders and/or contracts set aside for small business concerns as set forth above in paragraphs 68, 73, and 82; and

g.      On a quarterly basis, from at least January 2008 through the present, submitting GSA Form 72A, Contractor Reports of Sales, that understate the amount of EN POINTE GOV's sales using its GSA Schedule.

90.      By virtue of the conspiracy, the United States suffered damages and therefore is entitled to recover its damages, treble damages under the False Claims Act, and a civil penalty for each violation thereof.

### COUNT II
### False Claims Act – 31 U.S.C. § 3729(a)(1)(A)
### Presentation of False or Fraudulent Claims

91.     Relators repeat and reallege paragraphs 1 through 90 above as if fully set forth herein.

92.     Defendants knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval by the United States.

93.     By virtue of the false or fraudulent claims knowingly made or caused to be made by Defendants, the United States suffered damages and therefore is entitled to recover its damages, treble damages under the False Claims Act, and a civil penalty for each violation thereof.

### COUNT III
### False Claims Act – 31 U.S.C. § 3729(a)(1)(B)
### Making or Using False Records or Statements
### Material to False or Fraudulent Claims

94.     Relators repeat and reallege paragraphs 1 through 93 above as if fully set forth herein.

95.     Defendants knowingly made, used, or caused to be made or used, false records or statements (*i.e.*, the false representations, certifications, and re-certifications that EN POINTE and/or EN POINTE GOV were small business concerns and the false GSA Form 72A reports) material to false or fraudulent claims.

96.     By virtue of the false records or false statements knowingly made or caused to be made by Defendants, the United States suffered damages and therefore is entitled

to recover its damages, treble damages under the False Claims Act, and a civil penalty for each violation thereof.

## COUNT IV
### False Claims Act – 31 U.S.C. § 3729(a)(1)(G)
### Making or Using False Records or Statements Material to an Obligation to Pay

97.    Relators repeat and reallege paragraphs 1 through 96 above as if fully set forth herein.

98.    Defendants knowingly made, used, or caused to be made or used, false records or statements (*i.e.*, the false GSA Form 72A reports) material to an obligation to pay money to the United States, specifically GSA's Industrial Funding Fees.

99.    By virtue of the false records or false statements knowingly made or caused to be made by Defendants, the United States suffered damages and therefore is entitled to recover its damages, treble damages under the False Claims Act, and a civil penalty for each violation thereof.

## COUNT V
### False Claims Act – 31 U.S.C. § 3729(a)(1)(G)
### Concealing, Avoiding, or Decreasing an Obligation to Refund

100.   Relators repeat and reallege paragraphs 1 through 99 above as if fully set forth herein.

101.   Defendants knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay money to the United States funds, specifically GSA's Industrial Funding Fees, by underreporting the amount of EN POINTE GOV's sales on its GSA Schedule on its GSA Form 72A reports.

27

102.   By virtue of the false records or false statements knowingly made or caused to be made by Defendants, the United States suffered damages and therefore is entitled to recover its damages, treble damages under the False Claims Act, and a civil penalty for each violation thereof.

## PRAYER FOR RELIEF

WHEREFORE, Relators request that judgment be entered in favor of the United States and against Defendants jointly and severally as follows:

1.   For an award of damages in the amount of at least $49,021,100.99, reflecting the value of the contracts obtained by Defendants' improper conduct (at least $48,095,281.72) and the amount of IFF fees they failed to pay (at least $925,819.27);

2.   For an award of treble damages under the False Claims Act in the amount of at least $147 million;

3.   For civil penalties in the amount of at least $2,860,000, reflecting the maximum penalty available under the False Claims Act ($11,000) for each false statement or claim, which total at least 260;

4.   For injunctive relief;

5.   For an award to Relators in the maximum amount permitted under 31 U.S.C. § 3730(d) or any other applicable law, including alternate remedy provisions;

6.   For an award to Relators of their court costs, litigation expenses, and reasonable attorney's fees; and

7.     For all such further relief as may be just and proper.

Dated:  July 25, 2014                          **KLEVEN MCGANN LAW**

                                    *By:*  ~~Sarah Gl~~
                                           Sarah Kleven McGann (230408)
                                           105 West F Street, 4th Floor
                                           San Diego, CA  92101
                                           Tel:   (619) 838-2419
                                           Fax:  (619) 858-3306

                     *Of Counsel*:          Daniel Marino (*pro hac vice forthcoming*)
                                           Tillman   J.   Finley   (*pro   hac   vice
                                    *forthcoming*)
                                           **MARINO FINLEY PLLC**
                                           1100 New York Avenue, NW Suite 700W
                                           Washington, DC  20005
                                           Tel:   (202) 223-8888
                                           Fax:  (877) 239-2146

                                           *Counsel for Relators Anthony Colangelo
                                           and Minburn Technology Group, LLC*

RELATOR'S COMPLAINT FOR DAMAGES AND PENALTIES UNDER THE FALSE         CASE NO. CV-14-
CLAIMS ACT, 31 U.S.C. §§ 3729-3732

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| United States ex rel. Anthony Colengelo and Minburn Technology Group, LLC | En Pointe Gov, Inc.; En Pointe Technologies, Inc.; En Pointe Technologies Sales, Inc.; Dominguez East Holdings, LLC; and Din Global Corp. |

| (b) County of Residence of First Listed Plaintiff<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant   Los Angeles County<br>*(IN U.S. PLAINTIFF CASES ONLY)* |
|---|---|

| (c) Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. | Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. |
|---|---|
| Kleven McGann Law<br>105 West F St., 4th Floor<br>San Diego, CA 92101<br>Tel: (619) 838-2419 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☒ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ 199,000,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
False Claims Act, 31 U.S.C. §§ 3729-3732. Defendants have falsely and fraudulently obtained small business set-aside requirements.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☒ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:**   Case Number:

CV14-5865

| CV-71 (06/14) | CIVIL COVER SHEET | Page 1 of 3 |
|---|---|---|

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII.  VENUE**: Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes  ☒ No | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B:  Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | | |
|---|---|---|
| ☒ Yes  ☐ No | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.?  *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
| | | ☒ NO. Continue to Question B.2. |
| If "no," skip to Question C. If "yes," answer Question B.1, at right. | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties?  (Consider the two counties together.)  *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☒ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C:  Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | | |
|---|---|---|
| ☐ Yes  ☐ No | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?  *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Continue to Question C.2. |
| If "no," skip to Question D. If "yes," answer Question C.1, at right. | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties?  (Consider the two counties together.)  *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D: Location of plaintiffs and defendants? | **A.** Orange County | **B.** Riverside or San Bernardino County | **C.** Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |

| **D.1.  Is there at least one answer in Column A?** | **D.2.  Is there at least one answer in Column B?** |
|---|---|
| ☐ Yes  ☐ No | ☐ Yes  ☐ No |
| If "yes," your case will initially be assigned to the SOUTHERN DIVISION. | If "yes," your case will initially be assigned to the EASTERN DIVISION. |
| Enter "Southern" in response to Question E, below, and continue from there. | Enter "Eastern" in response to Question E, below. |
| If "no," go to question D2 to the right. ➡ | If "no," your case will be assigned to the WESTERN DIVISION. Enter "Western" in response to Question E, below. ⬇ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | WESTERN |

| QUESTION F: Northern Counties? | |
|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes  ☒ No |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES**: Has this action been previously filed **in this court**?          ☒ NO          ☐ YES

      If yes, list case number(s): _____

**IX(b). RELATED CASES**: Is this case related (as defined below) to any cases previously filed **in this court**?          ☒ NO          ☐ YES

      If yes, list case number(s): _____

Civil cases are related when they:

    ☐ A. Arise from the same or closely related transactions, happening, or event;

    ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

    ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Check all boxes that apply.  That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

---

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** *Sarah Cole*          DATE: 7-25-14

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

---

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
| --- | --- | --- |
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |