Michael B. McCollum (235447)
michael@mccollumcounsel.com
MCCOLLUM COUNSEL
453 S. Spring Street, Suite 725
Los Angeles, CA 90013
Tel:    (213) 534-6070
Fax:    (213) 947-4972

Daniel Marino (*pro hac vice*)
dmarino@marinofinley.com
Tillman J. Finley (*pro hac vice*)
tfinley@marinofinley.com
MARINO FINLEY PLLC
1100 New York Avenue, NW Suite 700W
Washington, DC 20005
Tel:    (202) 223-8888
Fax:    (877) 239-2146

*Counsel for Relators Anthony Colangelo
and Minburn Technology Group, LLC*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL. ANTHONY COLANGELO and MINBURN TECHNOLOGY GROUP, LLC, a Virginia limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>MODERN GOV IT, INC., formerly "En Pointe Gov, Inc.," a Delaware corporation; DINCO, INC., formerly "En Pointe Technologies, Inc.," a Delaware corporation; COLLAB9, INC., formerly "En Pointe Technologies Sales, Inc.," a Delaware corporation; DOMINGUEZ EAST HOLDINGS, LLC, a California limited liability company; and DIN GLOBAL CORP., a Delaware corporation,<br><br>Defendants. | Case No.   2:14-cv-05865-RGK-JPR<br><br>**RELATORS' FIRST AMENDED COMPLAINT FOR DAMAGES AND PENALTIES UNDER THE FALSE CLAIMS ACT, 31 U.S.C. §§ 3729-3732** |

COMES NOW Plaintiff the United States of America, by and through *qui tam* relators Anthony Colangelo and Minburn Technology Group, LLC (collectively, "Relators"), who brings this action under the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA"), and for the complaint against Defendants alleges as follows:

## **INTRODUCTION**

1.     This is an action brought on behalf of the United States to recover damages, obtain disgorgement, and impose civil penalties resulting from the knowingly false and/or fraudulent claims, records, certifications, and/or statements made, used, or caused to be made or used by the Defendants from at least 2005 through the present to obtain small business set-aside government contracts for the provision of information technology ("IT") products and services for which they were not eligible and to avoid payment of fees required as part of their participation in the General Services Administration's ("GSA") Multiple Award Schedule ("MAS") program.

2.     Specifically, Defendants have conspired to repeatedly and falsely represent and certify that Defendant Modern Gov IT, Inc. (formerly En Pointe Gov, Inc.) is a small business concern (or caused such to be represented or certified), thereby fraudulently making it eligible to compete for and to be awarded small business set-aside government contracts.  Defendants essentially have used En Pointe Gov, Inc. as a "front" for the large-business operations of Defendant DINCO, INC. (formerly En Pointe Technologies, Inc.) and COLLAB9, INC. (formerly En Pointe Technologies

Sales, Inc.), and their various affiliates, to gain access to hundreds of millions of dollars in small business set-aside contracts for which they would not otherwise qualify.

3.      Further, Defendants also have conspired to substantially underreport En Pointe Gov, Inc.'s sales under its GSA IT Schedule 70 MAS contract, No. GS-35F-0372N, on the company's quarterly GSA Form 72A, Contractor Report of Sales since at least the quarter ending December 31, 2007, thereby avoiding more than $1 million in Industrial Funding Fees owed to the GSA and concealing the falsity of its small business concern certifications.

4.      In fact, En Pointe Gov, Inc. has, from its creation, been an affiliate of, among others, Defendant En Pointe Technologies, Inc., a large, global IT products and services company with thousands of employees and annual revenues in excess of $300 million.

5.      By their conduct, Defendants have, to date, falsely and fraudulently obtained at least 157 small business set-aside requirements with a value in excess of $48 million.  At the same time, Defendant En Pointe Gov, Inc. has falsely and fraudulently failed to report more than 90 percent of its GSA Schedule 70 sales, thereby avoiding more than $1 million in fees (and likely more) and concealing the fact that, in 2012 and 2013, its GSA sales *alone* have exceeded the revenue-based size standards established by the Small Business Administration for some of the industry categories for which Defendant En Pointe Gov, Inc. claims small business status.

6. Accordingly, and as detailed below, Defendants are liable to the United States for the value of more than $48 million in falsely and fraudulently obtained small business set-aside contracts, at least $1.4 million in falsely and fraudulently avoided GSA Industrial Funding Fees, treble damages of approximately $148 million, and civil penalties of in excess of $3.8 million reflecting at least 352 instances of false representations and/or claims made to the United States.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, and 1367(a) and 31 U.S.C. § 3732.

8. This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a), which authorizes nationwide service of process in cases brought under the False Claims Act, and because, *inter alia*, all five Defendants have offices in this District, have transacted business in this District, have engaged in wrongdoing in this District, and have at least minimum contacts with the District.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 and 31 U.S.C. § 3732(a) because all five Defendants can be found in this District, all five transact business there, and acts proscribed by 31 U.S.C. § 3729 occurred there.

## PARTIES

10. Relator, Anthony Colangelo, is a resident of the Commonwealth of Virginia. Relator Colangelo is the Managing Member of Relator Minburn Technology

4

Group, LLC, a Virginia limited liability company and service-disabled veteran-owned small business with its primary office located in Great Falls, Virginia.

11.    Defendants are a group of companies that provide (or provided) IT products and services to commercial enterprises, educational and healthcare institutions, government agencies, and non-profits.  They are all owned, directly or indirectly, by Attiazaz "Bob" Din (EN POINTE's founder and CEO); his wife, Naureen Din (also a member of the Board of Directors); and members of their family.

12.    Defendant Modern Gov IT, Inc., formerly En Pointe Gov, Inc. (hereinafter "EN POINTE GOV"), is a Delaware corporation with its principal place of business located at 18701 S. Figueroa Street, Gardena, California 90248-4506.  It was created as a wholly-owned subsidiary of EN POINTE and remained so until January 1, 2011, when it became a wholly-owned subsidiary of DEH.  Subsequent to the filing of Relators' original Complaint in this action, EN POINTE GOV changed its name to Modern Gov IT, Inc.

13.    Defendant DINCO, INC., formerly En Pointe Technologies, Inc. (hereinafter "EN POINTE"), is a Delaware corporation with its principal place of business located at 18701 S. Figueroa Street, Gardena, California 90248-4506.  Since March 2009, it has been a wholly-owned subsidiary of DIN GLOBAL.  Subsequent to the filing of Relators' original Complaint in this action, EN POINTE changed its name to DINCO, INC.

14.     Defendant COLLAB9, INC., formerly En Pointe Technologies Sales, Inc. (hereinafter "EN POINTE SALES"), is a Delaware corporation with its principal place of business located at 18701 S. Figueroa Street, Gardena, California 90248-4506.  It is a wholly-owned subsidiary of EN POINTE.  Subsequent to the filing of Relators' original Complaint in this action, EN POINTE SALES changed its name to COLLAB9, INC.

15.     Defendant Din Global Corp. (hereinafter "DIN GLOBAL") is a Delaware corporation with its principal place of business located at 18701 S. Figueroa Street, Gardena, California 90248-4506.  DIN GLOBAL is a holding company, incorporated on February 4, 2009, which acquired EN POINTE on or about March 11, 2009.  DIN GLOBAL is owned by Attiazaz "Bob" Din, his wife, Naureen Din, and various members of the Din family.

16.     Defendant Dominguez East Holdings, LLC (hereinafter "DEH") is a California corporation with its principal place of business located at 18701 S. Figueroa Street, Gardena, California 90248-4506.  DEH is a holding company, incorporated on November 4, 2010, which acquired EN POINTE GOV on or about January 1, 2011. The President and sole owner of DEH is Ali Din, the son of Attiazaz "Bob" Din.

## The False Claims Act

17.     The False Claims Act makes subject to legal action any person who knowingly presents or causes to be presented false or fraudulent claims for payment or approval to the United States.  31 U.S.C. § 3729(a)(1).  The FCA also makes subject to

suit any person who "knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

18.     The term "knowingly" under the FCA means that a person, with respect to information, (a) has actual knowledge of the information, (b) acts in deliberate ignorance of the truth or falsity of the information, or (c) acts in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3728(b)(1). No proof of specific intent to defraud is required to show a person acted knowingly under the FCA. 31 U.S.C. § 3729(b).

19.     The FCA provides for recovery of three times the damages sustained by the United States ("treble damages") plus a civil penalty for each false claim presented or caused to be presented. This penalty is to be not less than $5,500 and not more than $11,000, per instance. 31 U.S.C. § 3729(a); 28 C.F.R. § 85.3(a)(9).

**The Small Business Act**

20.     Congress established the Small Business Administration ("SBA") in 1953. The SBA is a cabinet-level agency headquartered in Washington, D.C. Its mission is to preserve free competitive enterprise and to maintain and strengthen the overall economy of our nation by assisting in and facilitating the creation and growth of small businesses, a critical component of the country's economic strength and health.

21.     As set forth in Section 2 of the Small Business Act:

The essence of the American economic system of private enterprise is free competition.  Only through full and free competition can free markets, free entry into business, and opportunities for the expression and growth of personal initiative and individual judgment be assured.  The preservation and expansion of such competition is basic not only to the economic well-being but to the security of this Nation.  Such security and well-being cannot be realized unless the actual and potential capacity of small business is encouraged and developed.  It is the declared policy of the Congress that the Government should aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns in order to preserve free competitive enterprise, to insure that a fair proportion of the total purchases and contracts or subcontracts for property and services for the Government (including but not limited to contracts or subcontracts for maintenance, repair, and construction) be placed with small-business enterprises, to insure that a fair proportion of the total sales of Government property be made to such enterprises, and to maintain and strengthen the overall economy of the Nation.

15 U.S.C. § 631(a).

22.    The Federal Acquisition Regulations ("FAR") further state that "[i]t is the policy of the United States that small business concerns … shall have the maximum

practicable opportunity to participate in performing contracts let by any Federal agency …." FAR 52.219-8 ("Utilization of Small Business Concerns").

23.     The SBA is responsible for developing and administering initiatives to encourage the selection of small businesses to perform government contracts.  These efforts include various programs setting aside certain government contracts exclusively for small business concerns.

24.     In the Small Business Act, Congress created a government-wide goal for contracting to small businesses, which is currently 23% of federal executive agency procurements.  15 U.S.C. § 644(g).  Each year, the SBA reports on each of the federal agencies' progress in reaching its goal.  In order to meet the small business contracting goals, each federal agency involved in procurement creates opportunities called "set-asides" for either all small businesses or a subset of small businesses to compete against a pool of like-size contractors.  This allows small businesses to gain opportunities they might not have had competing against larger, resource-rich companies.

25.     For the purposes of federal procurement programs for which status as a small business concern is required, a concern must not exceed the size standard established by the SBA for the type of services at issue.  The size standard is articulated in terms of either the maximum allowable average number of employees in a 12-month period or the maximum allowable average annual receipts over a three-year period.  The specific standard varies based upon the particular industry at issue.  Each size standard

9

RELATORS' FIRST AMENDED COMPLAINT FOR DAMAGES AND
PENALTIES UNDER THE FALSE CLAIMS ACT, 31 U.S.C. §§ 3729-3732                CASE NO. 2-14-cv-05865-RGK-JPR

is matched to an industry code described in the North American Industry Classification System ("NAICS"), and the table is published annually in the Federal Register.  13 C.F.R. § 121.101.

26.    For example, NAICS Code 541519 for "Other Related Computer Services" has a size standard of average annual revenues of $25.5 million or less or, in the case of "Information Technology Value Added Resellers," 150 employees or less.  13 C.F.R. § 121.201.

27.    Businesses may have a primary NAICS code, but may also qualify for other NAICS codes depending on their business activities.

28.    To qualify for small business status, a company may not be affiliated with any other entities which, when combining the assets, employees, or other size factors of the affiliated company or companies with the business, would cause the business to exceed the size standards.

29.    The SBA determines whether an entity qualifies as a small business concern by counting its receipts, employees, or other measure including those of all its domestic and foreign affiliates, regardless of whether the affiliates are organized for profit.  13 C.F.R. § 121.103(a)(6).

30.    "Affiliation" exists when one business controls or has the power to control another or when a third party (or parties) controls or has the power to control both businesses.  13 C.F .R. § 121.103(a)(1).  Control may arise through "ownership,

management, previous relationships with or ties to another concern, and contractual relationships." 13 C.F.R. § 121.103(a)(2).  If one or more officers, directors, managing members, or general partners of a business controls the Board of Directors and/or the management of another business the businesses are affiliates.  13 C.F.R. § 121.103(e).

31.    "Affiliation" also exists when there is an identity of interest between individuals or businesses, including family members.  Individuals or firms that have identical (or substantially identical) business or economic interests may be treated as though they are affiliated unless they can demonstrate otherwise.  Family members, persons with common investments, or firms that are economically dependent through contractual (or other) relationships, are among those treated this way.  Patterns of subcontracting, commingling of staff and/or facilities, and other veiled attempts to disguise the true nature of the relationship may evidence an identity of interest.  13 C.F.R. § 121.103(t).

32.    Additionally, "Affiliation" exists under the "Newly Organized Concern Rule":

> Affiliation may arise where former officers, directors, principal stockholders, managing members, or key employees of one concern organize a new concern in the same or related industry or field of operation, and serve as the new concern's officers, directors, principal stockholders, managing members, or key employees, and the one concern

is furnishing or will furnish the new concern with contracts, financial or
technical assistance, indemnification on bid or performance bonds, and/or
other facilities, whether for a fee or otherwise …. A "key employee" is an
employee who, because of his/her position in the concern, has a critical
influence in or substantive control over the operations or management of
the concern.

13 C.F.R. § 121.103(g).

33.     Eligibility for small business opportunities is generally determined on a
procurement-by-procurement basis. Each procurement officer must classify the product
or service being sought in a particular NAICS code, identify the size standard that the
SBA has set for that code and specify the standard in the solicitation, so businesses can
correctly determine if they qualify as small for that particular solicitation. FAR 19.102.
A business may generally qualify as small under their primary NAICS code, but may
not qualify as small for a particular procurement and vice-versa.

34.     Businesses that do not qualify as a small business concern are labeled as
"other than small." Being "other than small" is not the same as being large; it only
means that the company does not qualify under the parameters set by Congress and the
SBA to be classified as a small business concern for a procurement only available to
small businesses.

35.    The SBA relies on businesses to self-certify their qualification as a small business when bidding on a contract.  As a condition of bidding on government contracts, a company is required to register.  Effective July 30, 2012, registration has been required through the System for Award Management ("SAM").  Prior to that time, contractors were required to register with the Central Contractor Registration ("CCR").

36.    In registering or renewing its registration (which must be done at least annually), a business provides general information and, among other things, certifies whether it as a small business.

37.    It is a federal criminal offense to "misrepresent[ ] the status of any concern or person as a 'small business concern' … in order to obtain for oneself or another any" prime contract or subcontract.  15 U.S.C. § 645.

38.    When a company bids on set-aside government contracts by misrepresenting its organizational status or affiliations with larger, non-qualified businesses, it takes contracts away from legitimate small businesses and undermines the objectives of the SBA.

39.    The Small Business Act provides that any business that misrepresents its status as a small business concern shall be subject to penalties under the False Claims Act.  15 U.S.C. § 637(m)(5)(C).

40.    Pursuant to 15 U.S.C. § 632(w)(1), there is a "presumption of loss to the United States based on the total amount expended on the contract … whenever it is

established that a business concern other than a small business concern willfully sought and received the award by misrepresentation."

41.    Further, 15 U.S.C. § 632(w)(2) states that:

The following actions shall be deemed affirmative, willful, and intentional certifications of small business size and status:

(A) Submission of a bid or proposal for a Federal grant, contract, [or] subcontract … reserved, set aside, or otherwise classified as intended for award to small business concerns.

(B) Submission of a bid or proposal for a Federal grant, contract, [or] subcontract … which in any way encourages a Federal agency to classify the bid or proposal, if awarded, as an award to a small business concern.

(C) Registration on any Federal electronic database for the purpose of being considered for award of a Federal grant, contract, [or] subcontract ….

**EN POINTE GOV's False Statements, Certifications, and Claims**

42.    EN POINTE GOV has, at least 221 times, falsely stated, represented, or certified to the United States that it is a small business concern.

43.    First, in EN POINTE GOV's certifications made through SAM on at least the following dates, representatives of EN POINTE GOV certified that it was both "a small business concern" and "a small business disadvantaged concern as defined in 13 C.F.R. 124.1002":

14

RELATORS' FIRST AMENDED COMPLAINT FOR DAMAGES AND
PENALTIES UNDER THE FALSE CLAIMS ACT, 31 U.S.C. §§ 3729-3732                CASE NO. 2-14-cv-05865-RGK-JPR

| March 22, 2012 | August 5, 2013 | June 10, 2014 |
| May 21, 2013 | January 28, 2014 | June 12, 2014 |

44.     Each time, the representative further specifically certified that EN POINTE GOV is a small business under the SBA's size standards for each of the following NAICS codes:

| 334112 | 423430 | 541513 |
| 334418 | 511210 | 541519 (exception 1) |
| 334513 | 541511 | 541519 (exception 2) |
| 335999 | 541512 | 811212 |

45.     Further, in some certifications, EN POINTE GOV also specifically certified that it was a small business under the SBA's size standards for former NAICS codes 334111, 334113, 334119, 334611, 334613, and 443120.

46.     Second, in requesting modification of its IT Schedule 70 MAS contract in or about August 2010, EN POINTE GOV falsely represented to GSA that it was a small business concern.

47.     Third, EN POINTE GOV again falsely represented to GSA that it was a small business concern in connection with GSA's exercise of a five-year option on GSA Schedule GS-35F-0372N in or about March 2013.

48.     Fourth, EN POINTE GOV falsely represented to the United States that it was a small business concern in bidding for orders and/or contracts which were

15

specifically identified as small business set-asides, including but not limited to the following:

| Contract No. | Agency | Award Date | Amount |
| --- | --- | --- | --- |
| GS35F0372N | Dept. of Defense (HQ Services / Office of the Secretary of Defense Communications) | 8/22/2013 | $496,723.68 |
| GS35F0372N | Small Business Administration | 9/25/2013 | $4,712,828.40 |
| GS35F0372N | Dept. of Defense | 3/12/2014 | $1,746,380.84 |
| GS35F0372N | Securities and Exchange Commission | 5/22/2014 | $7,655,992.53 |
| GS35F0372N | Dept. of Education | 5/30/2014 | $11,846,293.00 |
| EDCIO14A0002 | Dept. of Education | 5/30/2014 | $2,137,331.80 |

49.     All of the foregoing statements, representations, and/or certifications were knowingly false.

50.     Because of its affiliation with EN POINTE, among others, EN POINTE GOV, at the time it made such statements, representations, and/or certifications, did not meet the size standards for any of the NAICS codes set forth above in paragraphs 44 and 45 by virtue of its affiliation with EN POINTE, among others.

51.     Throughout its existence, EN POINTE GOV has been owned and controlled by EN POINTE, an EN POINTE subsidiary, a common parent company, and/or members of the Din family.

52.     From its incorporation in 2000 through 2010, EN POINTE GOV was a wholly-owned subsidiary of EN POINTE.

53.     On or about January 1, 2011, EN POINTE GOV became a wholly-owned subsidiary of DEH which in turn was owned by Ali Din, the son of Bob Din, the founder, CEO, and majority owner of EN POINTE.

54.     The same immediate family members, the Dins, are the ultimate owners of both EN POINTE and EN POINTE GOV.

55.     EN POINTE had more than 1,000 employees.

56.     Until 2009, EN POINTE was a publicly-traded stock corporation listed on the NASDAQ Stock Market.

57.     Since at least 1999, EN POINTE has had annual revenues in excess of $200 million, exceeding $500 million in some years.

58.     EN POINTE GOV shares the same principal business address and office with EN POINTE, *i.e.*, 18701 S. Figueroa Street, Gardena, California 90248-4506.

59.     EN POINTE GOV shares a telephone number with EN POINTE:  310-337-5200.

60.     The same individuals have acted on behalf of both EN POINTE and EN POINTE GOV, both by virtue of simultaneously holding positions with both companies and irrespective of their nominal employment by one entity or the other, including by signing certifications to the government, serving in management positions, serving as

17

contract administrators and/or government points of contact for both entities, and attending meetings with vendors.

61.     EN POINTE GOV utilizes special partnerships, authorizations, and other arrangements held by EN POINTE with computer hardware and software manufacturers, including EN POINTE's Licensing Solution Provider ("LSP") authorization from Microsoft.

62.     EN POINTE and EN POINTE GOV utilize a shared, or at least overlapping, information technology infrastructure.  Both companies utilize the same online ordering system called "AccessPointe."  Both companies use email addresses that end with the same domain, *i.e.*, "@enpointe.com."

63.     EN POINTE has itself used EN POINTE GOV's government contracts to market itself, including by specific reference to EN POINTE GOV's GSA IT 70 MAS contract.

64.     Since at least October 2012, EN POINTE SALES has received substantial payments from EN POINTE GOV for performing and providing sales and marketing support services, procurement services, information technology systems services (including telephones, email, computers, and printers), office equipment, meeting facilities, facilities management, and accounting, tax, and legal services.

65.     Including EN POINTE's employees and revenues with those of EN POINTE GOV results in employment and revenue figures that exceed (in some

instances far exceed) the SBA-established size standards for all of the NAICS codes claimed by EN POINTE GOV.

66.     Moreover, even setting aside the revenue of EN POINTE or any other affiliate, EN POINTE GOV's revenues from transactions with the federal government in both 2012 and 2013 exceeded the revenue-based size standard ($25.5 million) for NAICS Codes 541511 (Custom Computer Programming Services), 541512 (Computer Systems Design Services), 541513 (Computer Facilities Management Services), 541519 (Other Computer Related Services - Exception 1), and 811212 (Computer and Office Machine Repair and Maintenance).

67.     Between January 1, 2009 and December 31, 2013, EN POINTE GOV's transactions with various federal agencies, with base and exercised options, were obligated at an annual average in excess of $37.5 million.  For the three-year periods ending in 2012 and 2013, EN POINTE GOV's average annual sales just under its GSA Schedule exceeded $30 million and $50 million, respectively.

68.     Despite not qualifying as a small business concern, EN POINTE GOV has received, and submitted claims for payment in connection with, at least 141 transactions from various federal agencies specifically designated as small business set-asides.  The total value of those actions, including the base and all options, is $47,908,225.84.

## EN POINTE's False Statements, Certifications, and Claims

69.     EN POINTE itself has falsely stated, represented, or certified to the United States at least 39 times that it is a small business concern.

70.     First, in EN POINTE's certifications made through SAM on at least the following dates, representatives of EN POINTE certified that EN POINTE is "a small business concern."  Such false certifications were made on at least the following dates:

June 27, 2012                August 7, 2013                June 10, 2014

71.     Each time, the representative further specifically certified that EN POINTE is a small business under the SBA's size standards for each of the following NAICS codes:

| | | |
|---|---|---|
| 334111 | 334418 | 423430 |
| 334112 | 334513 | 519130 |

72.     Further, in some certifications, EN POINTE also specifically certified that it was a small business under the SBA's size standards for former NAICS codes 334113, 334119, 334611, 334613, and 443120.

73.     Second, EN POINTE falsely represented to the United States that it was a small business concern in bidding for orders and/or contracts which were specifically identified as small business set-asides.

74.     EN POINTE has received, and submitted claims for payment in connection with, at least 16 transactions from various federal agencies designated as small business set-asides with a total value of $187,055.88.

75.     Even setting aside the employees and/or revenue of EN POINTE GOV or any other affiliate, since at least 1995 EN POINTE's own employees and revenues have exceeded the SBA-established size standards for all of the NAICS Codes identified above in paragraphs 71 and 72.

## EN POINTE GOV's Under-Reporting of GSA Schedule Sales

76.     In the 1950s, the General Services Administration ("GSA") created the Federal Supply Schedule program, commonly referred to as the Multiple Award Schedule ("MAS").  The MAS program provides agencies with a simplified process of acquiring commercial supplies and services in varying quantities while obtaining volume discounts.  Under the program, indefinite-delivery/indefinite-quantity ("IDIQ") contracts are awarded to various contractors allowing them to provide identified supplies and/or services at stated prices and subject to pre-negotiated terms and conditions.  FAR 38.101(a).  Once GSA issues a vendor an MAS contract, a buying agency may simply order directly from the vendor.

77.     One way to do this is through GSA's online shopping and ordering system called "GSA Advantage!", one component of which is an electronic request-for-quotation ("RFQ") tool called "e-Buy."  Through e-Buy, the agency publicizes and

21

disseminates a statement of work ("SOW") and solicits quotations from GSA Schedule contractors.

78.     Since November 2, 2011, agencies have been able to set aside orders and Blanket Purchase Agreements ("BPAs") issued under the MAS program for small business concerns, including RFQs posted on e-Buy.  Such postings are to include a label identifying what kind of a set-aside the RFQ is and language stating that quotes from Schedule contractors who are not eligible for the set-aside will not be considered for award.

79.     MAS contracts are typically 20-year contracts comprised of a five-year base period with three five-year option periods.  As a condition of the award of an MAS contract, contractors are required to collect on GSA's behalf a fee from the "ordering agency" that utilizes the MAS contract equal to 0.75 percent of the amount invoiced to such ordering agency.  The MAS contractor is required to remit to GSA the fees collected on GSA's behalf each calendar quarter.  This contract usage fee is called the Industrial Funding Fee ("IFF") and it is intended to compensate GSA for the cost of running the schedule.  Contractors pay the IFF on a quarterly basis in conjunction with the filing of a GSA Form 72A, Contractor Report of Sales," through which the contractor reports its sales for the preceding calendar quarter.

80.     The largest of GSA's MAS contracts is the IT Schedule 70.  It enables any federal government agency to directly contract with commercial vendors for information technology products and services.

81.     Since 2003, Defendant EN POINTE GOV has had an IT Schedule 70 MAS contract, GSA Schedule GS-35F-0372N.

82.     EN POINTE GOV has received at least 2,084 transactions from various federal agencies utilizing its GSA Schedule, GS-35F-0372N.  The total value of those actions, including the base and all options, is more than $260 million.

83.     From 2010 through March 31, 2014, EN POINTE GOV made sales in excess of $208 million through its GSA Schedule, GS-35F-0372N.

84.     However, on its GSA Form 72A, Contractor Reports of Sales submitted to GSA for the same period, EN POINTE GOV reported less than $18 million in sales.

85.      Accordingly, for fiscal year 2010 through the first quarter of 2015, EN POINTE GOV reported less than *9%* of its actual total sales through its IT Schedule 70 MAS contract, GSA Schedule GS-35F-0372N.

86.     EN POINTE GOV has failed to report more than $190 million in sales through its GSA schedule resulting in at least $1.4 million in unpaid IFF fees.

## COUNT I
### Conspiracy to Violate the False Claims Act – 31 U.S.C. § 3729(a)(1)(C)

87.   Relators repeat and reallege paragraphs 1 through 86 above as if fully set forth herein.

88.   Beginning in or about 2005 and continuing through the date of this Complaint, all Defendants willfully conspired to:

    a.   knowingly present, or cause to be presented, false or fraudulent claims for payment or approval by the United States;

    b.   knowingly make, use, or cause to be made or used, false records or statements material to false or fraudulent claims;

    c.   knowingly make, use, or cause to be made or used, false records or statements material to an obligation to pay or transmit money to the United States; and

    d.   knowingly conceal or knowingly and improperly avoid or decrease an obligation to pay or transmit money to the United States,

all in violation of 31 U.S.C. § 3729(a)(1).

89.   One or more of Defendants performed various overt acts in furtherance the conspiracy, including but not limited to the following:

    a.   On various dates (including but not limited to March 22, 2012, May 21, 2013, August 5, 2013, July 28, 2014, June 10, 2014, June 12, 2014, and July

24

21, 2014) submitting SAM registrations certifying that EN POINTE GOV was a small business with respect to certain NAICS codes;

b.      On various dates (including but not limited to June 27, 2012, August 7, 2013, and June 10, 2014) submitting SAM registrations certifying that EN POINTE was a small business with respect to certain NAICS codes;

c.      In or about August 2010, in requesting modification of EN POINTE GOV's IT Schedule 70 MAS contract, falsely representing to GSA that it was a small business concern.

d.      In or about March 2013, again representing and certifying that EN POINTE GOV was a small business concern in connection with the government's exercise of its five-year option on EN POINTE GOV's GSA Schedule contract, GS-35F-0372N;

e.      On various dates, bidding for orders and/or contracts set aside for small business concerns as set forth above in paragraphs 48, 68, 73, and 82;

f.      On various dates, submitting invoices and/or requests for payment to the United States in connection with orders and/or contracts set aside for small business concerns as set forth above in paragraphs 68, 73, and 82; and

g.      On a quarterly basis, from at least January 2008 through April 2015, submitting GSA Form 72A, Contractor Reports of Sales, that understate the amount of EN POINTE GOV's sales using its GSA Schedule.

90.     By virtue of the conspiracy, the United States suffered damages and therefore is entitled to recover its damages, treble damages under the False Claims Act, and a civil penalty for each violation thereof.

## COUNT II
### False Claims Act – 31 U.S.C. § 3729(a)(1)(A)
### Presentation of False or Fraudulent Claims

91.     Relators repeat and reallege paragraphs 1 through 90 above as if fully set forth herein.

92.     Defendants knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval by the United States.

93.     By virtue of the false or fraudulent claims knowingly made or caused to be made by Defendants, the United States suffered damages and therefore is entitled to recover its damages, treble damages under the False Claims Act, and a civil penalty for each violation thereof.

## COUNT III
### False Claims Act – 31 U.S.C. § 3729(a)(1)(B)
### Making or Using False Records or Statements
### Material to False or Fraudulent Claims

94.     Relators repeat and reallege paragraphs 1 through 93 above as if fully set forth herein.

95.     Defendants knowingly made, used, or caused to be made or used, false records or statements (*i.e.*, the false representations, certifications, and re-certifications

that EN POINTE and/or EN POINTE GOV were small business concerns and the false GSA Form 72A reports) material to false or fraudulent claims.

96.     By virtue of the false records or false statements knowingly made or caused to be made by Defendants, the United States suffered damages and therefore is entitled to recover its damages, treble damages under the False Claims Act, and a civil penalty for each violation thereof.

## COUNT IV
### False Claims Act – 31 U.S.C. § 3729(a)(1)(G)
### Making or Using False Records or Statements Material to an Obligation to Pay

97.     Relators repeat and reallege paragraphs 1 through 96 above as if fully set forth herein.

98.     Defendants knowingly made, used, or caused to be made or used, false records or statements (*i.e.*, the false GSA Form 72A reports) material to an obligation to pay money to the United States, specifically GSA's Industrial Funding Fees.

99.     By virtue of the false records or false statements knowingly made or caused to be made by Defendants, the United States suffered damages and therefore is entitled to recover its damages, treble damages under the False Claims Act, and a civil penalty for each violation thereof.

## COUNT V
### False Claims Act – 31 U.S.C. § 3729(a)(1)(G)
### Concealing, Avoiding, or Decreasing an Obligation to Refund

100.   Relators repeat and reallege paragraphs 1 through 99 above as if fully set forth herein.

27

101.   Defendants knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay money to the United States funds, specifically GSA's Industrial Funding Fees, by underreporting the amount of EN POINTE GOV's sales on its GSA Schedule on its GSA Form 72A reports.

102.   By virtue of the false records or false statements knowingly made or caused to be made by Defendants, the United States suffered damages and therefore is entitled to recover its damages, treble damages under the False Claims Act, and a civil penalty for each violation thereof.

## PRAYER FOR RELIEF

WHEREFORE, Relators request that judgment be entered in favor of the United States and against Defendants jointly and severally as follows:

1.   For an award of damages in the amount of at least $49,495,281.72, reflecting the value of the contracts obtained by Defendants' improper conduct (at least $48,095,281.72) and the amount of IFF fees they failed to pay (at least $1.4 million);

2.   For an award of treble damages under the False Claims Act in the amount of at least $148 million;

3.   For civil penalties in the amount of at least $3,872,000, reflecting the maximum penalty available under the False Claims Act ($11,000) for each false statement or claim, which total at least 352;

4.   For injunctive relief;

5.     For an award to Relators in the maximum amount permitted under 31 U.S.C. § 3730(d) or any other applicable law, including alternate remedy provisions;

6.     For an award to Relators of their court costs, litigation expenses, and reasonable attorney's fees; and

7.     For all such further relief as may be just and proper.

Dated:  January 28, 2016                          **MCCOLLUM COUNSEL**

                              *By:*     ____/s/ Michael McCollum_____
                                        Michael B. McCollum (235447)
                                        453 S. Spring Street, Suite 725
                                        Los Angeles, CA  90013
                                        Tel:   (213) 534-6070
                                        Fax:   (213) 947-4972

                                        Daniel Marino (*pro hac vice*)
                                        Tillman J. Finley (*pro hac vice*)
                                        MARINO FINLEY PLLC
                                        1100 New York Avenue, NW Suite 700W
                                        Washington, DC  20005
                                        Tel:   (202) 223-8888
                                        Fax:   (877) 239-2146

                                        *Counsel for Relators Anthony Colangelo and Minburn Technology Group, LLC*